# 11-4791-cv

## United States Court of Appeals

### for the

### Second Circuit

BURTON T. FRIED,

*Plaintiff-Appellant,*

– v. –

LVI SERVICES, INC., aka LVi SERVICES, INC., LVI PARENT CORP.,
CODE HENNESSY SIMMONS LLC, dba CHS PRIVATE EQUITY V LP,
APOLLO INVESTMENT CORP., SCOTT E. STATE, in his official capacity and in his
individual capacity, BRIAN SIMMONS, in his official capacity and in his individual
capacity, RAJAY BAGARIA, in his official capacity and in his individual capacity,
GERALD J. GIRARDI, in his official capacity and in his individual capacity,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

THOMPSON WIGDOR LLP
*Attorneys for Plaintiff-Appellant*
85 Fifth Avenue, 5th Floor
New York, New York 10003
(212) 257-6800

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE ............................................................. 3

STATEMENT OF FACTS ................................................................. 4

      Scott State's Pre-Hire Inquiries Regarding Mr. Fried .................................. 8

      The Hiring Of Scott State ............................................................. 9

      The October 19, 2010 Age Comment ................................................. 9

      State's October 19, 2010 Email ...................................................... 10

      Mr. Fried's First Complaints of Discrimination ...................................... 10

      The November 4, 2010 Board Meeting ............................................... 10

      The November 5, 2010 Email ........................................................ 11

      Mr. Fried's Termination ............................................................. 11

SUMMARY OF ARGUMENT ........................................................... 14

ARGUMENT ........................................................................... 17

      I.     STANDARD OF REVIEW ...................................................... 17

      II.    THE DISTRICT , WHICH ANALYZED MR. FRIED'S ADEA
             RETALIATION CLAIM UNDER THE INCORRECT
             STANDARD, ERRED IN GRANTING SUMMARY
             JUDGMENT ................................................................... 19

III.  THE DISTRICT COURT, WHICH FAILED TO EXAMINE MR. FRIED'S ADEA DISCRIMINATION CLAIM UNDER THE TOTALITY OF THE CIRCUMSTANCES AND INCCORECTLY CONSTRUED STATE'S DISCRIMINATORY REMARK AS "STRAY," ERRED IN GRANTING SUMMARY JUDGMENT..........................................26

A. Mr. Fried Established A *Prima Facie* Case Of Age Discrimination..................................................28

B. A Myriad Of Issues Of Material Fact Exist As To Whether Defendants' Proffered Reason For Mr. Fried's Termination Was Pretextual .................................30

1. The Remark Was Made By A Decisionmaker.......................................36

2. The Remark Was Made Close In Time To Mr. Fried's Termination..............................36

3. A Reasonable Juror Could View The Remark As Discriminatory.......................................37

4. The Remark Was Related To The Decision Making Process ...................................38

IV.  THE DISTRICT COURT ERRED IN HOLDING THAT THE NYCHRL WAS INAPPLICABLE TO MR. FRIED'S DISCRIMINATION AND RETALIATION CLAIMS.....................43

CONCLUSION.......................................................48

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................49

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdu-Brisson v. Delta Air Lines, Inc.,*
    239 F.3d 456, 468 ................................................................34, 42

*Abreu v. Suffolk County Police Dept.,*
    03 CV 5927 (JFB)(WDW), 2007 WL 608331 (E.D.N.Y. Feb. 23, 2007) ....33

*Carlton v. Mystic Trans., Inc.,*
    202 F.3d 129 (2d Cir. 2000) ........................................................34

*Bickerstaff v. Vassar Coll.,*
    196 F.3d 435 (2d Cir. 1999) ........................................................18

*Danzer v. Norden Sys., Inc.,*
    151 F.3d 50 (2d Cir. 1998) .....................................................34, 35

*Diaz v. Jiten Hotel Mgmt., Inc.,*
    762 F. Supp. 2d 319 (D. Mass. 2011)............................................37

*Eastway Constr. Corp. v. City of New York,*
    762 F.2d 243 (2d Cir. 1985) ........................................................17

*Gallo v. Prudential Res. Serv.,*
    22 F.3d 1219 (2d Cir. 1994) ...................................................17, 18

*Giarratano v. Edison Hotel,*
    No. 08-CV-1849 (SAS), 2009 WL 464441, (S.D.N.Y. Feb. 24, 2009) ........39

*Gipson v. Wells Fargo N.A.,*
    460 F.Supp.2d 15 (D.D.C. 2006)...................................................37

*Gorzynski v. JetBlue Airways Corp.,*
    596 F.3d 93 (2d Cir. 2010) ....................................................27, 28

*Graham v. Long Island R.R.,*
    230 F.3d 34 (2d Cir.2000) ..........................................................18

*Gross v. FBL Fin. Servs., Inc.,*
  129 S.Ct. 2343 .......................................................................................*passim*

*Henry v. Wyeth Pharmaceuticals, Inc.,*
  616 F.3d 134 (2d Cir. 2010) .........................................................................35

*Heyman v. Commerce & Indus. Ins. Co.,*
  524 F.2d 1317 (2d Cir. 1975) .......................................................................17

<u>*Hofmann v. Dist. Council 37*</u>, No. 99-CV-8636 (KMW), 2004 WL 1936242, at *10
(S.D.N.Y. Aug. 31, 2004) *report and recommendation adopted as modified*, No.
99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) .......................41

*Joseph v. Marco Polo Network, Inc.,*
  No. 09-CV-1597 (DLC), 2010 WL 4513298, (S.D.N.Y. Nov. 10, 2010) ....29

*Kirsch v. Fleet Street, Ltd.,*
  148 F.3d 149 (2d Cir. 1998) .........................................................................37

*Liebowitz v. Cornell University*,
  584 F.3d 487  (2d Cir. 2009) .......................................................................27

*Mattera v. JPMorgan Chase Corp.,*
  740 F.Supp.2d 561 (S.D.N.Y. 2010) .....................................................20, 30

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973)...............................................................................19, 27

*Meiri v. Dacon,*
  759 F.2d 989 (2d Cir. 1985) .......................................................................18

*Montana v. First Fed. Sav. & Loan Ass'n,*
  869 F.2d 100 (2d Cir. 1989) .......................................................................18

*Morris v. Lindau,*
  196 F.3d 102 (2d Cir. 1999) .......................................................................25

*Morris v. New York City Dept. of Sanitation,*
  No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) .........41

*O'Reilly v. Marina Dodge, Inc.*,
    No. 10-CV-2977, 2011 WL 1897489 (2d Cir. May 19, 2011) .............39, 42

*Ostrowski v. Atl. Mut. Ins. Cos.*,
    968 F.2d 171 (2d Cir. 1992) ........................................................36

*Patrick v. LeFevre*,
    745 F.2d 153 (2d Cir. 1984) ........................................................18

*Pilgrim v. Luther*,
    571 F.3d 201 (2d Cir. 2009) ........................................................17

*Raskin v. The Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ....................................................41, 42

*Reed v. A.W. Lawrence & Co.*,
    95 F.3d 1170 (2d Cir. 1996) ..................................................19, 20

*Rose v. New York City Bd. of Educ.*,
    257 F.3d 156 (2d Cir. 2001) ........................................................36

*Schreiber v. Worldco, LLC*,
    324 F.Supp.2d 512 (S.D.N.Y. 2004) .......................................33, 40

*Sciola v. Quattro Piu, Inc.*,
    361 F. Supp. 2d 61 (E.D.N.Y. 2005) ............................................40

*Shapiro v. New York City Dept. of Educ.*,
    561 F. Supp. 2d 413 (S.D.N.Y. 2008) ..........................................41

*Shelley v. Geren*,
    10-35014 (9th Cir. Jan. 12, 2012)................................................28

*Shub v. Westchester Community College*,
    556 F.Supp.2d 227 (S.D.N.Y. 2008) .................................23, 24, 25

*Sousa v. Roque*,
    578 F.3d 164 (2d Cir. 2009) ........................................................17

*Terry v. Ashcroft,*
        336 F.3d 128 (2d Cir. 2003) ......................................................19, 22, 23, 24

*Tomassi v. Insignia Financial Group, Inc.*
        478 F.3d 111 (2d Cir. 2007) ................................................................*passim*

*Velasquez v. Gates,*
        No. 08-CV-2215 (CLP), 2011 WL 2181625, (E.D.N.Y. June 3, 2011) .......42

*Velez v. McHugh*,
        No. 09-CV-0925 (GAY), 2011 WL 778693, (S.D.N.Y. Mar. 2, 2011) ........18

## STATE CASES

*Hoffman v. Parade Publis.,*
        15 N.Y.3d 285 (2010)................................................................................43

*Williams v. N.Y. City Hous. Auth.,*
        61 A.D.3d 62 (1st Dep't 2009)....................................................................47

## STATUTES

28 U.S.C. §1291 ..............................................................................................1

28 U.S.C. § 1331 .............................................................................................1

28 U.S.C. §1367 ..............................................................................................1

29 U.S.C. §§ 621 *et seq.* ...................................................................................1

29 U.S.C. §623(a)(1).....................................................................................21

29 U.S.C. §623(d) ..........................................................................................21

42 U.S.C. §2000e-2(a) ...................................................................................21

42 U.S.C. §2000e-3(a) ...................................................................................21

42 U.S.C. §2000e-2(m)..................................................................................21

Fed. R. App. P. 4(a) ................................................................1

Fed. R. Civ. P. 56(c).............................................................17

Local Law No. 85 [2005] of City of NY [Restoration Act] ...................................47

New York Administrative Code §§ 8-101 *et seq*......................................................1

## STATEMENT OF JURISDICTION

The United States District Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiff-Appellant Burton T. Fried ("Mr. Fried") alleged that Defendants-Appellees LVI Services, Inc. and LVI Parent Corp. violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 *et seq*. ("ADEA").    Specifically, Mr. Fried alleges that: (1) he was discriminated against on the basis of his age; and (2) retaliated against for complaining about being discriminated against.    Pursuant to 28 U.S.C. §1367, the District Court has supplemental jurisdiction over Mr. Fried's related claims against Defendants-Appellees LVI Services, Inc. and LVI Parent Corp., Scott E. State ("State"), Brian Simmons ("Simmons"), Rajay Bagaria ("Bagaria") and Gerald J. Girardi ("Girardi") (collectively "Defendants") under the New York City Human Rights Law, New York Administrative Code §§8-101 *et seq*. ("NYCHRL").

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 because this is an appeal from an Order entered on September 2, 2011 and from an Opinion and Order entered on October 4, 2011 granting Defendants' motion for summary judgment in part and denying it in part, that were made final by the Order entered on October 27, 2011, which dismissed Plaintiff's sole remaining claim with prejudice.    On November 14, 2011, Mr. Fried timely filed a Notice of Appeal pursuant to Fed. R. App. P. 4(a).

## STATEMENT OF THE ISSUES

1. Whether the District Court, in failing to examine the totality of the circumstances and view all evidence in the light most favorable to Mr. Fried, erred in holding that Mr. Fried did not raise a triable issue of material fact as to whether Defendants' proffered reason for his termination was a mere pretext for unlawful discrimination in violation of ADEA.

2. Whether the District Court applied the wrong standard to Mr. Fried's retaliation claim under the ADEA, and as a result, did not determine whether Mr. Fried's complaint(s) of age discrimination was a motivating factor in Defendants' decision to terminate his employment in violation of the ADEA.

3. Whether the District Court, even if it applied the correct standard for retaliation under the ADEA, in failing to examine the totality of the circumstances and view all evidence in the light most favorable to Mr. Fried, erred in holding that Mr. Fried did not raise a triable issue of material fact as to whether Defendants' proffered reason for his termination was a mere pretext for retaliation in violation of ADEA.

4. Whether the District Court erred in holding that, despite the impact Mr. Fried's termination had in New York City, the NYCHRL did not apply to his age discrimination and retaliation claims.

## STATEMENT OF THE CASE

Mr. Fried commenced this action on December 13, 2010, by filing a Complaint in the United States District Court for the Southern District of New York alleging discrimination and retaliation in violation of the ADEA and the NYCHRL, as well as other common law claims.  On February 3, 2011, Mr. Fried filed an Amended Complaint.  On April 1, 2011, the District Court issued an Order dismissing all claims against Defendants Apollo Investment Corp., and Code Hennessey Simmons LLC d/b/a CHS Private Equity V LP.  The District Court also dismissed Mr. Fried's common law claims against all Defendants.  On May 23, 2011, the District Court issued and Opinion and Order regarding its April 1, 2011 decision.  The remaining Defendants filed their Answer on April 18, 2011.

After the close of discovery, on June 10, 2011, the remaining Defendants filed a motion for summary judgment.  On June 20, 2011, Mr. Fried filed his opposition to the motion.  On June 27, 2011, Defendants filed their reply.  On September 2, 2011, the District Court issued an Order granting Defendants' motion for summary judgment in part and denying it in part.  On October 4, 2011, the District Court issued and Opinion and Order regarding its September 2, 2011 decision.  On October 27, 2011, the District Court entered an Order dismissing Mr. Fried's only remaining claim with prejudice.  On November 14, 2011, Mr. Fried timely filed a Notice of Appeal.

## STATEMENT OF FACTS

Defendant LVI Parent Corp. ("Parent") maintains its principal place of business in New York City and is the parent and sole shareholder of Defendant LVI Services, Inc. ("LVI"). (A-284, A-369, A-385, A-410).    Parent is approximately 95% owned by: Apollo Investment Corp. ("Apollo"), CHS Private Equity V LP ("CHS"), and Falcon Investment Advisors ("Falcon"). (A-383-84). The Board of Directors of Parent (the "Board") is currently comprised of: Bagaria and Girardi from Apollo, Simmons and Robert Hogan ("Hogan") from CHS, John Schnabel ("Schnabel") from Falcon, State, Richard Ferruci and Robert Buck. (A-384).  While employed by LVI, Mr. Fried was Chairman of the Board. (A-384, A-426).

LVI is an environmental remediation and demolition company that maintains its principal place of business in New York City (the "New York City Office"). (A-284, A-370, A-386).  Along with all of its subsidiaries, LVI is comprised of approximately 20 offices across the United States and has thousands of employees. (A-454-55, A-459).

Mr. Fried, who has been referred to as the "founder" of LVI, was born on February 26, 1940. (A-473, A-476, A-487).  Hired in 1986, he was the General Counsel of LVI until he became its President and Chief Executive Officer in 1989.

(A-496-97).   As President and CEO, Mr. Fried initially worked out of the New York City Office. (A-389).

In or around September 2003, LVI opened a satellite office to the New York City Office in Westport, Connecticut ("Westport Office"). (A-497).  Because Mr. Fried lived in Westport, he decided to work out of the Westport Office two to three days a week and work out of the New York City Office two to three days a week. (A-389-90, A-498-500).   Between November 2005 and July 2006, Mr. Fried worked out of the Westport Office three days a week and out of the New York City Office two days a week. (A-532).

Because LVI became the dominant leader in its industry while Mr. Fried was President and CEO, Mr. Fried, in 2005, recommended to the then current owner of LVI  that it find a President and CEO with experience managing a billion-dollar company. (A-501-02).  However, Mr. Fried had no intention of retiring once a new President and CEO was hired, and decided to continue working for LVI as an employee with the job title of Chairman and to continue serving as Chairman of the Board.  (A-503-05, A-514, A-531).

In or around July 2006, Robert McNamara ("McNamara") was hired by LVI as its President and CEO and Mr. Fried became Chairman of LVI. (A-388, A-535). In connection with his new role, Mr. Fried envisioned working four days each week. (A-509-10).  However, after his first week as Chairman, he reverted back to

working at least five days a week. (A-509-10).  As Chairman under McNamara, Mr. Fried was responsible for, among other things, strategic growth, legal matters and sales. (A-440, A-531).  As Chairman, Mr. Fried did a good job. (A-427-28, A-440).

While Mr. Fried was Chairman under McNamara, he was based in the Westport Office. (A-532).  Despite the location of his office, he still worked in New York City for LVI. (A-389-90, A-538-40).  For example, he worked out of the New York City office on occasion and attended numerous meetings concerning LVI business in New York City. (A-389-90, A-540).  He also called and/or emailed, almost daily, personnel in the New York City Office about projects in New York City and/or about issues involving the operations of the New York City Office. (A-540).  When Mr. Fried was not in New York City working, or communicating with LVI personnel in New York City concerning LVI business in New York City, he was drafting and reviewing paperwork involving LVI projects in New York City. (A-540).

In early 2010, McNamara resigned, and Mr. Fried was asked by Simmons to be the interim President and CEO of LVI until McNamara's replacement could be found. (A-412, A-460-61, A-508-09, A-531).  Not only did Mr. Fried agree to serve in this capacity, but he also continued to serve as Chairman of LVI and intended to continue as Chairman after a new President and CEO was found. (A-

391, A-441, A-443-44, A-531).  While interim President and CEO, Mr. Fried did a good job. (A-391, A-428, A-462).  In fact, just six months prior to his termination, he was specifically told by Simmons that he was "earning every penny" of his salary, and five months prior to his termination, Bagaria and Girardi also commended Mr. Fried's performance by writing that "we are fortunate to have Burt Fried as interim CEO who had done a good job stabilizing the situation." (A-544, A-558).

While Mr. Fried was interim President and CEO, and later as Chairman, LVI was conducting a substantial amount of business in New York City. (A-441-43, A-540-42).  For example, it was performing work at: (a) Madison Square Garden in connection with a $27.5 million contract; (b) 130 Liberty Street in connection with an approximately $30 million contract; (c) Hudson Yards in connection with a $10 million contract; and (d) Yankee Stadium in connection with a $3 million contract. (A-441-42).  The former two contracts, which Mr. Fried played a role in securing, were two of the biggest contracts that LVI had at the time. (A-442-43).

While he was interim President and CEO, Mr. Fried, who was still based in the Westport Office, continued to work in New York City for LVI. (A-433, A-466, A-540-42).  For example, he worked out of the New York City Office on occasion and continued to attend numerous meetings concerning LVI business in New York City, including four meetings in connection with the Madison Square Garden

project. (A-433, A-442-43, A-466, A-540-42).  He also continued to call and/or email, almost daily, personnel in the New York City Office about projects in New York City and/or about issues involving the operations of the New York City Office. (A-392, A-466, A-542).  He also, on a weekly basis, participated in conference calls to New York City to discuss issues concerning a project in New York City. (A-542).

**Scott State's Pre-Hire Inquiries Regarding Mr. Fried**

In or around August 2010, State, who was 47 years old at the time, was introduced to Mr. Fried as a candidate for President and CEO of LVI.  (A-285, A-511-12).  On September 14, 2010, before State was even hired, he inquired about how Mr. Fried could be removed as Chairman of the Board. (A-565-66).

Again, before he was hired, State asked John Leonard ("Leonard"), the Chief Operating Officer of LVI, if Mr. Fried, who was 70 years old at the time, was going to retire. (A-444-45, A-483-84).  Mr. Leonard said no. (A-444-45, A-485, A-569).  In fact, Mr. Fried had often told Mr. Leonard that he intended to die in his chair. (A-443).

On September 19, 2010, before being hired and despite already being told by Leonard that Mr. Fried had no intention of retiring, State wrote the following in the body of a lengthier email to Hogan:

■ In the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and

8

offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI. (A-485, A-569).

## The Hiring Of Scott State

On approximately September 28, 2010, State was hired by LVI as its President and CEO. (A-287, A-482). Upon State's hire, Mr. Fried assumed his prior title and job duties of Chairman of LVI. (A-371, A-531, A-572). As Chairman, Mr. Fried continued to do a good job. (A-446). During this time, Mr. Fried, who was still based in the Westport Office, continued to work in New York City for LVI. (A-465, A-542). For example, he continued to attend meetings concerning LVI business in New York City. (A-465, A-499-500, A-542).

## The October 19, 2010 Age Comment

On October 19, 2010, Mr. Fried met with State in New York City to discuss Mr. Fried's job duties. (A-515, A-575). During the meeting, State told Mr. Fried that he was going to take away all of his duties and give them to others (who were younger than Mr. Fried by decades) (A-285, A-393, A-446-47, A-476-77, A-516-18, A-692-96). When Mr. Fried asked State why he was doing this, Mr. State admitted:

- "Burt, you're 71 years of age, how much longer do you expect to work?"

(A-447, A-518).  State made this comment despite knowing that Mr. Fried wanted to "remain active forever" and had no intention of retiring. (A-443-45, A-485, A-569, A-688).  In response to State's ageist remark, Mr. Fried told State that he was 70 years old and that he intended to work for LVI for many years to come. (A-516-17).  Despite Mr. Fried's response, State decided to reassign his duties. (A-393, A-517).

**State's October 19, 2010 Email**

After he met with Mr. Fried, that same day State emailed Simmons and wrote the following sentence in reference to Mr. Fried:

- ■ "I was clear with him that it was my objective to have him truly retire and be just an on call resource."

(A-575).

**Mr. Fried's First Complaints of Discrimination**

After this meeting and prior to the end of October 2010, Mr. Fried spoke to Bagaria, Simmons and Schnabel, and told them that State wanted to reassign all of his duties and complained about the comment State made. (A-373, A-463-64, A-518-24).

**The November 4, 2010 Board Meeting**

On November 4, 2010, the Board held a quarterly meeting in New York City which Mr. Fried attended. (A-578).  At the end of the meeting, the Board discussed Mr. Fried's future role at LVI. (A-579).  During this meeting, Mr. Fried calmly

10

told the Board that State reassigned all of his duties to others and also told them the age-related comment State made. (A-374, A-414, A-467, A-588-90).  He also told the Board that State's actions constituted age discrimination. (A-374, A-430, A-589-90).  At the conclusion of the meeting, no decision regarding Mr. Fried's continued employment was made. (A-374-75, A-415).  Instead, the Board decided to have Schnabel reach out to Mr. Fried and State to broker a resolution. (A-374).  Further, the Board decided not to investigate Mr. Fried's complaint of age discrimination, even though Jeffrey Smith, Esq., a partner at Sidley Austin (the same firm representing Defendants) and LVI's outside counsel, was present at the Board meeting. (A-385, A-416, A-585-87, A-591-92, A-681, A-683).

## The November 5, 2010 Email

On November 5, 2010, State emailed his personal friend, who he was communicating with about LVI business, and wrote the following sentence in reference to Mr. Fried:

■   In a battle with founder about his need to retire but Board gets it and is working to exit him with some respect.

(A-473, A-487).

## Mr. Fried's Termination

On November 15, 2010, Mr. Fried's attorneys hand delivered a letter to State's attention at the New York City Office to address the discriminatory conduct about which he previously complained. (A-395, A-595-98).  On November 16,

2010, a majority of the Board members (Girardi, Simmons, Hogan, Schnabel and State) discussed the November 15 letter. (A-417-19, A-468, A-601). The Board members, including State, decided to ignore the November 15 letter and send a letter in response. (A-418-19, A-601, A-603). The letter in response to Mr. Fried's decision to hire counsel to pursue his age discrimination claims, which was sent to Mr. Fried on November 16, 2010, terminated Mr. Fried's employment as Chairman of LVI. (A-603-05). The decision to terminate Mr. Fried was made by State. (A-614, A-633, A-647, A-662). Prior to State's hire, the Board never considered firing Mr. Fried. (A-372-73, A-413).

The November 16 letter also advised Mr. Fried that he could continue to be Chairman of the Board and offered him the opportunity to work for LVI as a consultant on an hourly basis. (A-604-05). However, this arrangement was contingent on Mr. Fried agreeing not to sue LVI for age discrimination and retaliation. (A-605-06). Moreover, Mr. Fried was not guaranteed a minimum number of hours, could have been terminated at any time upon 30-days notice, and was only guaranteed $37,500. (A-605). Mr. Fried declined the "offer." (A-289, A-684).

After he was fired, Mr. Fried's job duties were mostly reassigned to Tom Cullen who was 35, Gregory DiCarlo who was 44, David Pearson who was 44, Frank Aiello who was 45, John Leonard who was 46, State who was 47, Mark

12

Canessa who was 48, Kamal Sookram who was 53, and Joseph Annarumma who was 57. (A-285, A-393, A-446-47, A-476-77, A-692-96).   At the time of his termination, Defendants admitted that Mr. Fried, who had worked for LVI for 24 years and was 70 years of age, had the ability to perform a valuable role with LVI. (Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment p.1).

# SUMMARY OF THE ARGUMENT

Mr. Fried, who was 70 years old at all relevant times, commenced this action pursuant to the ADEA and the NYCHRL after he was terminated by Defendants because of his age and was retaliated against after complaining about being discriminated against because of his age.

With respect to his retaliation claim, Mr. Fried first complained of age discrimination as early as October 19, 2010. He again complained of age discrimination on November 4, 2010. After no investigation or corrective action was taken in response to these complaints, Mr. Fried's attorneys sent the President and CEO of LVI a letter memorializing Mr. Fried's complaints of age discrimination. In response to the letter, after 24 years of outstanding service, Mr. Fried was terminated the next day.

The District Court erred in granting summary judgment on Mr. Fried's ADEA retaliation claim because it analyzed his claim under the incorrect standard, *i.e.*, "but-for" v. "motivating factor." Nevertheless, under either standard, a genuine issue of material fact exists as to whether Mr. Fried was terminated in response to his attorneys' letter in light of the documentary evidence and an admission by a board member of Parent that the letter terminating Mr. Fried's employment was sent in response to his attorneys' letter.

With respect to his discrimination claim, on October 19, 2010, approximately 3 weeks after State was hired, State met with Mr. Fried and told Mr. Fried that he was reassigning all of his duties.  When Mr. Fried asked why, State responded as follows: "Burt, you're 71 years of age, how much longer do you expect to work?"  Additionally, despite knowing that Mr. Fried had no intention of retiring, State admittedly made it his objective to have Mr. Fried retire.  When Mr. Fried would not voluntarily leave the company he was with for 24 years, State terminated him despite there being no issue with Mr. Fried's work performance.

The District Court erred in granting summary judgment on Mr. Fried's ADEA discrimination claim because, instead of requiring him to raise a genuine issue of material fact as to whether his termination was pretextual, it required him to "demonstrate" and "prove" on summary judgment that "but-for" his age, he would not have been terminated.  In any event, a genuine issue of material fact exists as to whether Mr. Fried was terminated because of his age.  Additionally, the District Court erred in grating summary judgment because it did not view the evidence in the light most favorable to Mr. Fried or examine the facts presented in support of Mr. Fried's discrimination claim under the totality of the circumstances. There is also a genuine issue of material fact as to whether State's October 19, 2010 ageist comment was a "stray" remark.

15

With respect to Mr. Fried's retaliation and discrimination claims under the NYCHRL, the District Court erred in holding that the NYCHRL did not apply to his claims because Mr. Fried's termination had a significant and definite impact on New York City.

# ARGUMENT

## I.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. See Sousa v. Roque, 578 F.3d 164, 169 (2d Cir. 2009); Pilgrim v. Luther, 571 F.3d 201, 204 (2d Cir. 2009).

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden is upon the moving party to demonstrate that no genuine issue regarding any material fact exists. See Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).  In considering that, all ambiguities must be resolved and all inferences drawn in favor of the non-moving party. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Res. Serv., 22 F.3d 1219, 1224 (2d Cir. 1994).

With respect to employment discrimination cases, it is well-settled that "[c]aution should be exercised in addressing summary judgment motions . . . where intent and state of mind are at issue because 'careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'" Velez v. McHugh, No. 09-CV-0925 (GAY), 2011 WL 778693, at *2 (S.D.N.Y. Mar. 2, 2011) (quoting Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.2000)); see Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985); Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984). "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo v. Prudential Res. Serv., 22 F.3d 1219, 1224 (2d Cir. 1994); see Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999) ("as discrimination will seldom manifest itself overtly, courts must be alert to the fact that [e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law.") (internal quotation omitted).

## II.

## THE DISTRICT COURT, WHICH ANALYZED MR. FRIED'S ADEA RETALIATION CLAIM UNDER THE INCORRECT STANDARD, ERRED IN GRANTING SUMMARY JUDGMENT

Mr. Fried alleges that he was terminated in retaliation for complaining about age discrimination in violation of the ADEA. (A-49, A-51). The District Court erred in granting summary judgment on Mr. Fried's retaliation claim for two reasons. First, the District Court incorrectly analyzed Mr. Fried's ADEA retaliation claim under the Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343 (2009), "but for" standard when it should have analyzed his claim under the "motivating factor" standard. (SPA-29, SPA-31). Second, even if the District Court applied the correct standard, which it did not, its one sentence analysis in the Opinion and Order, despite acknowledging that the retaliation claim was a "closer question" than Mr. Fried's ADEA discrimination claim, completely failed to grasp, let alone examine Girardi's admission that Mr. Fried's termination was in response to his counsel's letter outlining Mr. Fried's claims of age discrimination. (SPA-29, SPA-31).

Retaliation claims under the ADEA are analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003). Under this framework, Mr. Fried must first establish a *prima facie* case of retaliation. See Reed v. A.W. Lawrence & Co.,

19

95 F.3d 1170, 1178 (2d Cir. 1996). If he establishes a *prima facie* case, Defendants must articulate a legitimate nonretaliatory reason for terminating Mr. Fried. Id. at 1181. Should they satisfy that requirement, the burden shifts to Mr. Fried to raise a triable issue of material fact as to whether the defendant's proffered reason for the adverse action was a mere pretext for unlawful retaliation. Id.

In this case, the District Court correctly held that Mr. Fried established a *prima facie* case of retaliation because he complained of age discrimination as early as October 19, 2010 to members of the Board and was terminated less than a month later. (SPA-29-31). The District Court also found that Defendants articulated a legitimate nonretaliatory reason for terminating Mr. Fried. (SPA-23, SPA-31). However, the District Court analyzed the final prong of Mr. Fried's ADEA retaliation claim under the wrong standard because it required him to meet the heightened "but for" standard instead of the lower, and correct, "motivating factor" standard. (SPA-29, SPA-31).

The Supreme Court in Gross did not address whether a plaintiff is required to meet the "but-for" standard for ADEA retaliation claims because Gross was a disparate treatment case. 129 S. Ct. at 2350-51. The Second Circuit has also not resolved the issue since Gross was decided. See Mattera v. JPMorgan Chase Corp., 740 F.Supp.2d 561, n.13 (S.D.N.Y. 2010). Therefore, in the absence of controlling

20

authority, Mr. Fried was only required to establish that an issue of fact existed as to whether his complaint(s) of age discrimination was a motivating factor in the decision to terminate him. See Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 114 (2d Cir. 2007).  Given the language of Title VII (and its amendments), the ADEA, and Gross, this is the only logical conclusion.  In holding that a plaintiff asserting disparate treatment claims under the ADEA must meet the "but for" standard at trial, the Supreme Court in Gross focused on the language of the 1991 amendments to Title VII, 42 U.S.C. §2000e-2(m), that specified that in establishing "an unlawful employment practice" (not defined as retaliation), the "motivating factor" standard is utilized. *Compare* 42 U.S.C. §2000e-2(a) to 42 U.S.C. §2000e-3(a).  Noting that the ADEA had a similar definition which included the phrase "because of" as Title VII's pre-1991 amendment (compare 29 U.S.C. §623(a)(1) with 42 U.S.C. §2000e-2(a)), the court concluded that because Congress did not amend the ADEA to include the motivating factor language, it demonstrated the congressional intent to hold a plaintiff to a higher standard ("because of" or "but for") at trial under the ADEA.

This analysis, as examined under Gross, does not, however, apply in the context of retaliation claims, as Congress did not amend the definition of retaliation in either Title VII or the ADEA. See 29 U.S.C. §623(d) and 42 U.S.C. §2000e-3(a).  Thus, given the almost identical language of both Title VII and the

ADEA as it relates to claims of retaliation, and because <u>Gross</u> and the Title VII amendments only applied to the underlying claims of discrimination, the motivating factor test should be utilized in analyzing Mr. Fried's claims of retaliation under the ADEA. <u>See</u> <u>Terry</u>, 336 F.3d at 141.

Regardless of whether this Court analyzes Mr. Fried's ADEA retaliation claim under the "motivating factor" standard or the <u>Gross</u> standard, material issues of fact exist as to whether Mr. Fried's complaints of discrimination, including the November 15 letter complaining about age discrimination, was a motivating factor in the decision to fire him or whether Defendants' proffered reason for his termination was pretextual. In this case, Mr. Fried's earliest complaint of discrimination occurred sometime between October 19, 2010 and October 30, 2010, when he contacted multiple members of the Board to oppose State's decision to reassign his job duties because of his age. (A-373, A-463-64, A-518-24). Regardless of which date is used as the operative date of Mr. Fried's first complaint, it is undisputed that he was terminated less than a month after he complained of age discrimination. (A-604-05). Further, the Board never contemplated firing Mr. Fried until after he complained. (A-372-73, A-413). When coupled with the questionable grounds of Mr. Fried's termination, an issue of fact exists as to whether Mr. Fried was terminated for engaging in protected activity.

Moreover, Girardi testified at deposition that in response to Mr. Fried's November 15 complaint of age discrimination, the Board sent a letter to him the next day that terminated his employment. (A-418-19, A-601, A-603-05). This admission is damning to Defendants. In fact, to make matters worse for Defendants, the retaliatory animus was also documented by Girardi who wrote, in his contemporaneous notes on November 16, the following: "Burt- sent pre-emptive letter; ignore and send good faith letter offer to Burt Fried." (A-601). The "good faith letter offer" referenced by Girardi in his notes that was sent to Mr. Fried terminated his employment without reason after 24 years. (A-603-08). Viewing the evidence in a light most favorable to Mr. Fried and drawing all inferences in his favor, a reasonable interpretation of Girardi's admission and notes is that the reason Mr. Fried was fired is because he complained about age discrimination. See, e.g., Shub v. Westchester Community College, 556 F.Supp.2d 227 (S.D.N.Y. 2008). Not only did the District Court examine this issue under the wrong standard, it completely neglected to address any of this evidence in its one sentence conclusory "analysis" in the Opinion and Order.

Terry v. Ashcroft is instructive. 336 F.3d 128. There, the Second Circuit reversed the lower court's grant of summary judgment on the plaintiff's retaliation claim based on his non-promotion. In Terry, prior to his application to fill Vacancy 93-01, the plaintiff filed a complaint with the EEO regarding his

unsuccessful application for a promotion to a Vacancy 92-59. Id. at 141.

Candidates for Vacancy 92-59 were listed on a memorandum that contained a note

beside the plaintiff's name that read "Pending Complaint," and a note beside

another applicant's name that read "EEO Activity." The Second Circuit found that:

> [t]he presence of such notations is evidence from which a
> reasonable trier-of-fact could infer that [the plaintiff's]
> "Pending Complaint" was a motivating factor in the
> promotion decision, particularly when coupled with
> evidence that other INS employees who reported problems
> experienced retaliation.

Id. at 142.  The Court went on to hold that:

> the wholly unexplained presence of the notations "EEO
> action" and "pending complaint" on the list of candidates is
> sufficient – especially given the evidence of a pattern of
> retaliatory action in the agency – to create a genuine issue
> of material fact regarding the pretextual nature of
> defendants' rationale.

Id.

Also, in Shub, 556 F.Supp.2d 227, the Southern District of New York

denied the defendants' motion for summary judgment as to the plaintiff's ADEA

retaliation claim.   In Shub, the plaintiff, a former associate professor at

Westchester Community College, claimed that the defendants did not hire him for

the Fall 2006 semester and subsequent semesters in retaliation for him filing a

Charge of Discrimination under the ADEA with the Equal Employment

Opportunity Commission. Id. at 257.  At deposition, when the plaintiff's supervisor

24

was asked why he decided not to hire the plaintiff after the Spring 2006 semester, he replied: "Well, we had a suit pending against us and I just didn't know how to proceed after that." Id.  The court held:

> A reasonable interpretation of [the supervisor's] statement could be that one reason behind the decision not to hire plaintiff for the Fall 2006 semester was because he filed the EEOC charge.  Although a plaintiff may not rely on conclusory assertions of retaliatory motive, "but must offer instead some tangible proof to demonstrate that [his] version of what occurred was not imaginary," plaintiff has offered "some tangible proof to demonstrate that one reason defendants did not hire him was because he filed the EEOC charge."

Id. at 257-58 (quoting Morris v. Lindau, 196 F.3d 102, 111 (2d Cir. 1999)). Combined with the close proximity (3 months) of time between the plaintiff's filing of the charge and the decision not to hire him, the court held that a material issue of fact existed as to whether the plaintiff's EEOC charge was a motivating factor in the defendant's decision. Id. at 258.

The facts pertaining to Defendants' proffer of a nonretaliatory reason for Mr. Fried's termination are in clear dispute.  The admission that the November 16 termination letter was sent in response to Mr. Fried's November 15 complaint of discrimination, coupled with all of the other evidence detailed above, raises issues of fact for a jury to decide.  Accordingly, the District Court's grant of summary judgment on Mr. Fried's ADEA retaliation claim should be reversed.

## III.

## THE DISTRICT COURT, WHICH FAILED TO EXAMINE MR. FRIED'S ADEA DISCRIMINATION CLAIM UNDER THE TOTALITY OF THE CIRCUMSTANCES AND INCORRECTLY CONSTRUED STATE'S DISCRIMINATORY REMARK AS "STRAY," ERRED IN GRANTING SUMMARY JUDGMENT

Mr. Fried also alleges that he was stripped of his job duties and terminated because of his age in violation of the ADEA. (A-48, A-50). The District Court erred in granting summary judgment on Mr. Fried's discrimination claim because the record demonstrates that genuine issues of material fact exist regarding whether the reason for Mr. Fried's termination was pretextual.

The Opinion and Order dismissing Mr. Fried's ADEA claim reads more of advocacy to justify its decision rather than an analysis of whether, viewing the evidence in a light most favorable to Mr. Fried and examining the totality of circumstances, Mr. Fried raised a triable issue of material fact as to whether Defendants' proffered reason for his termination was a mere pretext for unlawful discrimination. In its failure to adhere to this standard, the District Court's opinion is rife with instances in which Mr. Fried was held to a higher standard. Rather than reviewing all of the evidence set forth by Mr. Fried cumulatively, including the direct and indirect evidence supporting his *prima facie* case (which Defendants did not contest he established), and in the light most favorable to Mr. Fried, the opinion examines each piece of evidence in isolation. The District Court's opinion

26

also incorrectly concluded that Mr. State's discriminatory comment was "stray," despite Second Circuit authority to the contrary. (SPA-24-25). Further, the opinion also incorrectly held that Mr. Fried must "demonstrate" and "prove" that age was the "but for" cause of the challenged employment actions rather than using the correct standard, namely, whether there is a genuine issue of material fact as to whether Defendants' purported reason for the adverse actions was a pretext for unlawful discrimination. (SPA-23-24).

Similar to Mr. Fried's ADEA retaliation claim, an ADEA discrimination claim is also analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). As set forth above, under McDonnell Douglas, Mr. Fried must first establish a *prima facie* case of age discrimination. Id. If he does, Defendants bear the burden to "articulate some legitimate, nondiscriminatory reason for the [adverse act]." Liebowitz v. Cornell University, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). Should Defendants satisfy that requirement, the burden shifts to Mr. Fried to raise a triable issue of material fact as to whether  Defendants' proffered reason for the adverse actions was a mere pretext for unlawful discrimination. See Id. at 499, 503-506.[1]

---

[1]    It is important to note that the holding of Gross was in the context of a trial and not on summary judgment. Thus, the appropriate standard using the McDonnell Douglas burden-shifting analysis in the context of summary judgment is not that Mr. Fried must raise a genuine

## A.  **Mr. Fried Established A *Prima Facie* Case Of Age Discrimination**

Defendants did not contest that Plaintiff satisfied his burden of establishing a *prima facie* case of discrimination. (SPA-22).  In any event, in order to establish a *prima facie* case under the ADEA, the plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." <u>Gorzynski</u>, 596 F.3d at 106-107.  In this case, it is undisputed that at all relevant times, Mr. Fried was 70 years old. (A-476).  It is also undisputed that Mr. Fried, as a 24 year employee of LVI, including 20 as its President and CEO and/or Chairman, was qualified to hold the Chairman position at the time his job duties were reassigned and at the time he was fired. (A-391, A-427-28, A-440, A-446, A-462, A-496-97, A-538, A-544, A-558).   It is also undisputed that Mr. Fried was fired effective November 30, 2010 from LVI. (A-604-05).

With respect to the fourth prong, it is also undisputed that:

- ■ Mr. Fried worked at LVI for 24 years before State was hired. (A-538).  At all times, Mr. Fried's work performance was good. (A-427-28, A-440, A-446, A-462, A-544, A-558). In fact, a few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (A-544), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO." (A-558);

---

issue of material fact that age was the "but for" reason for termination.  Rather, Mr. Fried only has to raise a genuine issue of material fact that Defendants' proffered reason for his termination was pretextual. See <u>Shelley v. Geren</u>, 10-35014 (9th Cir. Jan. 12, 2012).

- On September 19, 2010, before State was hired, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI." (A-485, A-569);

- On October 19, 2010, when Mr. Fried asked State why he was reassigning his job duties to other employees, State said, "Burt you're 71 years of age, how much longer do you expect to work?" (A-447, A-516-18);

- After meeting with Mr. Fried on October 19, 2010, State wrote to Simmons, "I was clear with [Mr. Fried] that it was my objective to have him truly retire and be just an on call resource." (A-575);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (A-473, A-487);

- State, who is 23 years younger than Mr. Fried, made the decision to fire him less than a month after State age-related comment to Mr. Fried. (A-285, A-614, A-633, A-647, A-662); and

- After he was fired, Mr. Fried's job duties were reassigned to employees that ranged from 13 to 35 years younger than him. (A-285, A-393, A-446-47, A-476-77, A-692-96).

In light of this evidence, an issue of fact exists as to whether Mr. Fried's termination occurred under circumstances giving rise to an inference of discrimination. See Joseph v. Marco Polo Network, Inc., No. 09-CV-1597 (DLC), 2010 WL 4513298, at *10 (S.D.N.Y. Nov. 10, 2010) ("For the purposes of assessing the plaintiffs' *prima facie* case, the plaintiffs' evidence of [their

29

supervisor's] explicit age-related comments in connection with the performance of the plaintiffs' professional duties is sufficient."); <u>Mattera</u>, 740 F. Supp. 2d at 573 ("The Second Circuit has continuously held that an inference of discrimination arises . . . when an older qualified employee is replaced by someone younger.") (collecting cases).

Based upon the fact that Defendants did not challenge that Mr. Fried met his initial burden, the District Court only addressed whether Defendants articulated a legitimate nondiscriminatory reason for Mr. Fried's termination, and whether, albeit incorrectly, Mr. Fried "demonstrated" or "proved" that his age was the "but-for" cause of his termination, rather than whether Mr. Fried, in viewing the evidence in a light most favorable to him and under the totality of the circumstances, raised a genuine issue of material fact that Defendants' proffered reason for the adverse actions was pretextual.

## B.  A Myriad Of Issues Of Material Fact Exist As To Whether Defendants' Proffered Reason For Mr. Fried's Termination Was Pretextual

The District Court, which acted as judge and jury, erred in holding that Mr. Fried failed to demonstrate issues of fact that Defendants' proffered reason for his termination was pretextual. (SPA-24).  The District Court clearly failed to examine all of the facts and the totality of circumstances.

It must be kept in mind that at the age of 70, Mr. Fried had already worked at LVI for 24 years and helped grow LVI into one of the biggest and most

successful companies in its industry.  It must also be noted that Mr. Fried was performing his job well at all times.

This is not a case in which Mr. Fried was part of a large scale reduction-in-force, or where his performance was problematic or in which documented deficiencies were noted.  According to Defendants, Mr. Fried was terminated "to ensure that the new CEO and President, Scott E. State, would have the freedom to manage the Company as he saw fit." (SPA-22).  Defendants' proffered excuse for Mr. Fried's termination is weak.  It should be noted that when McNamara was CEO and President of LVI, Mr. Fried worked as Chairman under McNamara without issue. (A-688).  In fact, as Chairman, his work performance was good. (A-427-28, A-440).  There was absolutely no legitimate reason for Defendants to believe that he could not have similarly worked as Chairman under State.  In light of all of the evidence, the veracity of Defendants' reason is highly suspect.  At the very least, there exists a multitude of genuine issues of material fact as to whether this stated reason is pretextual.

With these facts in mind, even before Mr. Fried could have possibly interfered with State's management of LVI, State was hell-bent on terminating Mr. Fried because of his age.  In fact, before State even started working at LVI, he wrote to Hogan inquiring about how to remove Mr. Fried as Chairman of the Board, a position that had no direct impact State's day-to-day management of LVI.

(A-565-66).  State also wrote to Hogan that "in the best case scenario, Burt will decide to retire at some date certain from LVI upon a new CEO being named . . . ." (A-485, A-569).  Moreover, State received assurances from Mr. Fried that he would give State independence to run LVI and that he would not interfere with State. (A-698, A-700).  Tellingly, Defendants do not even claim that Mr. Fried actually interfered with State's management of LVI, and did not demonstrate that there was any danger that Mr. Fried would interfere with State, or meddle in any other way with the management of LVI.  In fact, when Mr. Fried was Chairman under McNamara, there is no evidence he interfered with McNamara's management of LVI.

Furthermore, while Mr. Fried was interim President and CEO, he did a good job.  (A-391, A-428, A-462)  Simmons told him that he was "earning every penny" of his salary and Bagaria and Girardi wrote that "we are fortunate to have Burt Fried as interim CEO who had done a good job stabilizing the situation." (A-544, A-558).  And while he was Chairman after State was hired, as always, Mr. Fried continued to do a good job. (A-446).

Importantly, on October 19, 2010, when Mr. Fried met face-to-face with State, State told Mr. Fried that he was going to be reassigning Mr. Fried's duties to other employees. (A-518).  When Mr. Fried asked State <u>why</u> he was reassigning his job duties to other employees, State unabashedly said, "Burt, you're 71 years of

age, how much longer to do expect to work?" (A-447, A-518)  This admission that Mr. Fried's duties were being assigned because of his age is a rare instance of direct evidence of age discrimination. See Abreu v. Suffolk County Police Dept., 03 CV 5927 (JFB)(WDW), 2007 WL 608331, at *14 (E.D.N.Y. Feb. 23, 2007) ("Verbal comments may constitute direct evidence of retaliation when made by a decision-maker in the adverse employment action, and where there is a close nexus between the comments and the action."); Schreiber v. Worldco, LLC, 324 F.Supp.2d 512, 518 (S.D.N.Y. 2004) ("Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff.").  Based on this evidence alone, a reasonable jury could easily find that Defendants' reason for firing Mr. Fried at the age of 70 was pretextual.

However, the District Court mistakenly found that State's discriminatory statement (which the court incorrectly concluded that Mr. Fried's "case hinges almost exclusively") was a "stray remark." (SPA-24-25).  It is unclear how this discriminatory remark referencing Mr. Fried's age in connection with his continued employment can be deemed "stray" when the word "retire" was used on at least 3 separate occasions in reference to Mr. Fried, despite State knowing that Mr. Fried had no intention of retiring. (A-444-45, A-473, A-483-85, A-569, A-

575).  This Court's ruling in <u>Tomassi</u> bears out the District Court's mistake. 478 F.3d 111.  The District Court was required to consider "<u>all</u> of the evidence in the light most favorable to the plaintiff to determine whether it could support a reasonable finding in the plaintiff's favor." <u>Id.</u> at 115 (emphasis added).  Instead, the District Court decontextualized State's comment - not taking into account the totality of the circumstances - and incorrectly viewed it in a vacuum. <u>See</u> <u>Carlton v. Mystic Trans., Inc.</u>, 202 F.3d 129, 136 (2d Cir. 2000) ("Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may 'bear a more ominous significance' when considered within the totality of the circumstances." (quoting <u>Danzer v. Norden Sys., Inc.</u>, 151 F.3d 50, 56 (2d Cir. 1998).

The categorization of a remark as "stray" must follow a holistic examination of the evidence. <u>See</u> <u>Id.</u> at 115-16 (Purpose of describing remarks as "stray" "was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient.  We did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category."); <u>see also</u> <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 468 (2d Cir. 2001) (management representative's numerous comments about the age of the pilot force, when "viewed against the background of

34

[defendants'] all-consuming interest in the age and projected retirement rates" of pilots, "inescapably" led to the conclusion that defendant airline's "actions may indeed have been motivated by age-based animus"); Danzer, 151 F.3d at 56 ("[W]hen . . . other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance."). The District Court should have considered whether all the evidence "in the aggregate raises a triable question" as to whether Defendants' proffered reason for Mr. Fried's termination was pretextual. Tomassi, 478 F.3d at 115-16.

In Henry v. Wyeth Pharmaceuticals, Inc., 616 F.3d 134 (2d Cir. 2010), this Court described the proper approach for applying the "stray remarks" analysis to individual cases. "In determining whether a remark is probative, they have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Id. at 149. Examining these four factors, it is clear that State's remark was probative of age discrimination on his part.

1.     <u>The Remark Was Made By A Decisionmaker</u>

The reference to Mr. Fried's age (not to mention the use of the word "retire" on at least 3 separate occasions) was made by the very same person who decided to terminate Mr. Fried.  It was not a "remote and oblique" remark by someone other than the person who made the decision to fire Mr. Fried, but the very person responsible for firing Mr. Fried.  See <u>Tomassi</u>, 478 F.3d at 115 (describing remarks as "stray" when they are "made by someone other than the person who made the decision adversely affecting the plaintiff" because they "may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark," and finding that since the remarks were made by the person who decided to terminate plaintiff, they could not be characterized as "stray"); <u>see also</u> <u>Ostrowski v. Atl. Mut. Ins. Cos.</u>, 968 F.2d 171, 182 (2d Cir. 1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decisionmaking process"); <u>cf.</u> <u>Rose v. New York City Bd. of Educ.</u>, 257 F.3d 156, 162 (2d Cir. 2001) (contrasting "the stray remarks of a colleague" with "comments made directly to" the plaintiff by someone with "enormous influence over the decision-making process").

2.     <u>The Remark Was Made Close In Time To Mr. Fried's Termination</u>

The remark was made by State less than one month before Mr. Fried's termination, and during a discussion in which State told Mr. Fried that he was

going to take away all of his duties and give them to others who were younger than Mr. Fried by decades.[2] See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 162-63 (2d Cir. 1998) (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiff's discharge).

### 3.    A Reasonable Juror Could View The Remark As Discriminatory

A reasonable juror could view the remark as discriminatory since it was made in response to Mr. Fried's inquiry about his future at LVI to explain why his duties were going to be redistributed.  In no uncertain terms, State responded that his duties would be redistributed because of his age. See Gipson v. Wells Fargo N.A., 460 F.Supp.2d 15, 27 (D.D.C. 2006) ("Since there is a genuine issue as to any meaning in [the Area Manager's] comment, and since the meaning in that comment is material to the outcome of the case, the question must be presented to the jury for final resolution."); see also Tomassi, 478 F.3d at 113 (reversing grant of summary judgment where a sixty-three year old employee testified that the employer had said when discharging her that "I figure[d] . . . you probably didn't want to work long hours any more and you would be happier doing something part-time"); Diaz v. Jiten Hotel Mgmt., Inc., 762 F. Supp. 2d 319, 337 (D. Mass. 2011) ("The use of . . . ageist offensive language . . . is highly probative.  What we

---

[2]    State also used the word "retire" in reference to Mr. Fried on at least 3 occasions within 2 months of his decision to terminate Mr. Fried.

say in the workplace may well reflect what motivates us, and could well affect how welcoming the environment is.").

    4.   The Remark Was Related To The Decision-Making Process

The context in which the remark was made shows that it was clearly related to the decision-making process. That context includes, for example, that despite being aware that Mr. Fried had no intention of retiring:

- On September 19, 2010, before State was even hired, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI." (A-485, A-569);

- On October 19, 2010, directly after the meeting with Mr. Fried where State stripped him of his job duties because of his age, State wrote to Simmons that during the meeting with Mr. Fried, he was clear that it was his "objective to have [Mr. Fried] truly retire." (A-575);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (A-473, A-487).

The District Court clearly did not view Mr. State's repeated use of the word "retire" in the light most favorable to Mr. Fried. The District Court also failed to appreciate this Court's edict that while "[i]t is perfectly possible that the defendant's explanation is the correct one . . . it is our obligation at this stage to interpret ambiguities in the evidence in the light most favorable to the Plaintiff." Tomassi, 478 F.3d at 116. State insisted on pushing the concept of Mr. Fried's

retirement on Mr. Fried and others, although State was fully aware that Mr. Fried had no intention of retiring.  Whether State's choice of words evinces a desire to remove Mr. Fried because of his age, especially when coupled with all of the other genuine issues of material fact, is a classic question for the jury.  See Giarratano v. Edison Hotel, No. 08-CV-1849 (SAS), 2009 WL 464441, at *6 (S.D.N.Y. Feb. 24, 2009) (finding that the question of whether the use of the word "retirement" referred to plaintiff's age was a question to be resolved by the jury); see also O'Reilly v. Marina Dodge, Inc., No. 10-CV-2977, 2011 WL 1897489, at *2 (2d Cir. May 19, 2011) ("Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.").

The District Court's conclusion that State's remarks were "isolated" and "stray" ignores that Mr. State used the word "retire" on at least 3 occasions. (SPA-25).  Moreover, the District Court's conclusion that "the single, isolated mention of Fried's age, . . . cannot, standing alone, create an issue of material fact . . ." fails to examine the facts in the light most favorable to Mr. Fried and in the context of State's repeated use of the word "retire," and in conjunction with all of the other facts, including the facts supporting Mr. Fried's *prima facie* case. (SPA-25).

Furthermore, the District Court's misinterpretation that Mr. Fried somehow admitted that State "qualified" the age-based remark by asking "what if you get hit by a bus," demonstrates how far the District Court was willing to go to justify its dismissal of Mr. Fried's claims. (SPA-25).   At no time did Mr. Fried admit that State "qualified" his ageist remark.   To the contrary, while Mr. Fried admitted that State made the comment "what if you get hit by a bus," Mr. Fried understood that to mean that he should retire because of his age and enjoy life now because he could die at some point in the future. (A-516-17).   Drawing all reasonable inferences in his favor, a jury could likewise interpret that statement the same way.

This case closely mirrors Sciola v. Quattro Piu, Inc., 361 F. Supp. 2d 61 (E.D.N.Y. 2005), where the court denied summary judgment on the plaintiff's age discrimination claim.   In Sciola, although the plaintiff's general manager was aware he had no intention of retiring, the general manager made the following age-based comments to the plaintiff: (1) "why are you still working?" (2) "I would retire if I was you;" and (3) "Why don't you retire, you are sixty-three years old?" Id. at 63-64.   The court held that given the timing of the comments - within two years of the adverse action - a reasonable person could view the circumstances "as discriminatory as the speaker's opinion is that once an arbitrary age is reached, an individual should retire." Id. at 68; see also Schreiber v. Worldco LLC, 324 F. Supp. 2d 512, 522-23 (S.D.N.Y. 2004) (denying summary judgment where

decision-makers made multiple age-based comments in the context of the plaintiff's employment three or four months before the plaintiff left the defendant); Hofmann v. Dist. Council 37, No. 99-CV-8636 (KMW), 2004 WL 1936242, at *10 (S.D.N.Y. Aug. 31, 2004) *report and recommendation adopted as modified*, No. 99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) (denying summary judgment where decision-makers told the plaintiffs that they should retire and that it would be a good idea to consider retirement); Morris v. New York City Dept. of Sanitation, No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) (denying summary judgment where the plaintiff was told multiple times that he should retire and that he was not in the defendant's future plans).

When looking at the totality of the circumstances, which the District Court clearly did not do here, State's comment clearly "bear[s] a more ominous significance." Shapiro v. New York City Dept. of Educ., 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) ("[w]hile it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented . . . the jury has a right to conclude that they bear a more ominous significance") (quoting Abdu-Brisson, 239 F.3d at 468)). The District Court's reliance on Raskin v. The Wyatt Co., 125 F.3d 55 (2d Cir. 1997), is completely misplaced. (SPA-27). Putting aside all of the other evidence in this case, including the repeated use of the word

"retire," the comment made to Raskin, while he was seeking a new position, was a simple question in October 1991 as to whether he had an "interest in a career change notwithstanding the possibility that [he] would have the option of taking early retirement. Id. at 64. In addition, after the comment inquiring about Raskin's interest in the early retirement program, the conversation turned to issues regarding his performance and poor relationship with other employees. Id. at 63. Finally, despite his declaration in opposition to summary judgment, Raskin testified at his deposition that he had a subsequent conversation with the individual who made the remark in December 1991 and could not recall what was discussed. Id. Thus, there were inconsistencies in the plaintiff's account, a break in time from when the alleged comment was made, and none of the many other facts that are contained within the record in this case. Taken as a whole, an issue of fact exists as to whether Defendants' proffered reason for Mr. Fried's termination was pretextual. See O'Reilly, 2011 WL 1897489, at *4 (finding that where the plaintiff was subjected to ageist jokes, replaced by a younger employee, and demonstrated that an issue of fact existed as to whether the defendant's justification for his termination was pretextual, a reasonable jury could conclude that age was the but for cause of the plaintiff's termination); Velasquez v. Gates, No. 08-CV-2215 (CLP), 2011 WL 2181625, at *14 (E.D.N.Y. June 3, 2011) (denying summary judgment where the defendant made comments to the plaintiff regarding the speed

42

at which she worked and evidence showed that the defendant's non-discriminatory reason was false).

Accordingly, viewing the facts in the light most favorable to Mr. Fried, drawing all reasonable inferences in his favor, and viewing the totality of the circumstances, an issue of fact exists as to whether Defendants' decision to terminate Mr. Fried's employment, after such a long and distinguished career, was pretextual. There is little doubt that a rational jury will infer from all of the evidence that Mr. Fried was ultimately terminated because of his age.

## IV.

## THE DISTRICT COURT ERRED IN HOLDING THAT THE NYCHRL WAS INAPPLICABLE TO MR. FRIED'S DISCRIMINATION AND RETALIATION CLAIMS

Mr. Fried also alleges that he was stripped of his duties and terminated because of his age, and retaliated against for complaining about age discrimination, in violation of the NYCHRL. (A-50-51).

Although Mr. Fried lived in Connecticut and physically maintained an office there, the New York Court of Appeals has held that the NYCHRL applies to non-residents if the discriminatory conduct had an impact within New York City. Hoffman v. Parade Publications., 15 N.Y.3d 285, 289 (2010). The decision to terminate Mr. Fried undoubtedly had an impact in New York City.

43

From 1986 through September 2003, Mr. Fried worked exclusively in the New York City Office. (A-389-90, A-496-97).  From September 2003 through July 2006, Mr. Fried split his time almost evenly between the New York City Office and the Westport Office. (A-389-90, A-497-500, A-532).  From July 2006 until May 2010, although Mr. Fried used the Westport Office as his base, he continued to work in New York City for LVI and its subsidiaries by generating business, overseeing projects, and attending meetings. (A-538-40).  Additionally, even when Mr. Fried was not physically working in New York City, he called and/or emailed LVI personnel in the New York City Office almost daily about LVI-related projects in New York City and/or about issues involving the operations of LVI at its New York City office including, but not limited to, accounts receivable, personnel and legal matters. (A-540).

From May 2010 until his unlawful termination approximately six months later, Mr. Fried continued to work in New York City for LVI and its subsidiaries. (A-540).  For example, Mr. Fried attended:

- A meeting in New York City with Turner Construction Company ("Turner"), Madison Square Garden officials and their consultants in connection with a project involving the renovation of Madison Square Garden ("MSG Project") to discuss scope of work and contract issues.

- A meeting in New York City with Turner, MSG Project officials and their consultants to discuss pricing of the MSG Project.

- A meeting in New York City in connection with the MSG Project with Turner, MSG Project officials and their consultants to answer questions

44

regarding the  historical integrity and current business practices of LVI and its subsidiaries.

- A meeting in New York City with Turner in connection with the MSG Project to sign the contract for the project.  As a result of Mr. Fried's efforts, LVI and/or its subsidiaries employ up to approximately 700 workers in connection with the $27.5 million MSG Project.

- A meeting in New York City with attorneys from Sidley Austin LLP, and other parties with their attorney, regarding a dispute about the obligation of LVI to pay the balance of a purchase price for a company that an LVI subsidiary purchased.

- A meeting in New York City with Russell Reynolds Associates to discuss the search for a President and CEO for LVI.

- A meeting in New York City with American International Group to discuss with its insurance and surety executives the status of the recapitalization and loan restructuring, and current financial results of LVI.

- Multiple meetings in New York City with Avisco, Inc. to negotiate a strategic alliance between LVI and Avisco, Inc. in order to secure projects.

- A meeting in New York City with Helix Enterprises to negotiate a strategic alliance between LVI and Helix Enterprises in order to secure projects.

- A meeting in New York City with a consultant to discuss how LVI could secure projects in Haiti.

- A meeting in New York City with a New York based building owner to secure a multi-million dollar project for an LVI subsidiary.  The subsidiary was subsequently awarded the project.

- Multiple meetings in New York City to interview candidates for the LVI President and CEO position.

- A meeting in New York City with an owner of an environmental management firm to discuss potential business opportunities for LVI.

■   A meeting in New York City with representatives of DEME to discuss a potential strategic alliance in order to secure projects.

■   A meeting in New York City with candidates for New York City based management positions within the LVI organization.

■   A meeting in New York City with State to discuss Mr. Fried's future role at LVI

■   A meeting in New York City of the Board of LVI.

(A-450-42).   Additionally, Mr. Fried called and/or emailed LVI personnel in the New York City Office almost daily about LVI-related projects in New York City and/or about issues involving the operations of LVI at its New York City office including, but not limited to, accounts receivable, personnel and legal matters. (A-542).   Mr. Fried functioned essentially as a telecommuter through his constant communications with LVI's New York City clients, his contacts, and with LVI's New York City employees.

Moreover, State's discriminatory reassignment of Mr. Fried's job duties occurred in New York City, and Mr. Fried opposed this action at a Board meeting in New York City.   Also, Mr. Fried was paid by the New York City Office from LVI's New York City controlled bank account. (A-542).   The decision to reassign Mr. Fried's job duties, and eventually terminate him impacted New York City by preventing Mr. Fried from: (1) working on multi-million dollar projects he helped secure in New York City which created hundreds of job in New York City; (2)

traveling to meet with LVI clients and potential clients in New York City; and (3) overseeing employees in the New York City Office.  As such, the NYCHRL applies to Mr. Fried.

The District Court's finding that the NYCHRL did not apply to Mr. Fried's claims cuts directly against the public policy expressed in the statute.  The New York City Council amended the NYCHRL in 2005 because the statute had "been construed too narrowly to ensure protection of the civil rights of all persons covered by the law." Local Law No. 85 [2005] of City of NY [Restoration Act]; see also Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 66-69 (1st Dep't 2009) ("[t]he independent analysis [of NYCHRL claims] must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial' purposes").  The District Court's decision accomplished exactly what the Local Civil Rights Restoration Act sought to prevent, namely, the narrowing of the statute's protections.  Accordingly, the District Court erred in holding that the NYCHRL did not apply to Mr. Fried's discrimination and retaliation claims.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff-Appellant Burton T. Fried respectfully requests that this Court reverse the District Court's grant of summary judgment and remand this case to the District Court for further proceedings, and grant such other and further relief that this Court deems just and proper.

Dated:  February 27, 2012
      New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

By:      _____s/_____
      Douglas H. Wigdor
      Shaffin A. Datoo

      85 Fifth Avenue
      New York, New York 10003
      Telephone:  (212) 257-6800
      Facsimile:  (212) 257-6845
      dwigdor@thompsonwigdor.com
      sdatoo@thompsonwigdor.com

      Attorneys for Plaintiff-Appellant

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 11,151 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft®

Office Word 2003 in Times New Roman font using a 14-point font size.

Dated:  February 27, 2012
          New York, New York


Respectfully submitted,

THOMPSON WIGDOR LLP


By:      _____s/_____
         Douglas H. Wigdor
         Shaffin A. Datoo

         85 Fifth Avenue
         New York, New York 10003
         Telephone:  (212) 257-6800
         Facsimile:  (212) 257-6845
         dwigdor@thompsonwigdor.com
         sdatoo@thompsonwigdor.com

         Attorneys for Plaintiff-Appellant

49