# 11-4791-cv

## United States Court of Appeals
## for the
## Second Circuit

BURTON T. FRIED,

*Plaintiff-Appellant,*

– v. –

LVI SERVICES, INC., aka LVi SERVICES, INC., LVI PARENT CORP., CODE HENNESSY SIMMONS LLC, dba CHS PRIVATE EQUITY V LP, APOLLO INVESTMENT CORP., SCOTT E. STATE, in his official capacity and in his individual capacity, BRIAN SIMMONS, in his official capacity and in his individual capacity, RAJAY BAGARIA, in his official capacity and in his individual capacity, GERALD J. GIRARDI, in his official capacity and in his individual capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# REPLY BRIEF FOR PLAINTIFF-APPELLANT

THOMPSON WIGDOR LLP
*Attorneys for Plaintiff-Appellant*
85 Fifth Avenue, 5th Floor
New York, New York 10003
(212) 257-6800

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

ARGUMENT ..................................................................................... 1

I. IN SUPPORT OF THEIR FICTIONALIZED ACCOUNT OF THE FACTS, DEFENDANTS MAKE NUMEROUS ALLEGATIONS THAT ARE NOT SUPPORTED BY THE RECORD ............................1

II. DESPITE CLEAR EVIDENCE OF RETALIATION, THE DISTRICT COURT, WHICH IMPROPERLY ENGAGED IN ISSUE-RESOLUTION, ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER MR. FRIED WAS TERMINATED BECAUSE HE COMPLAINED OF AGE DISCRIMINATION..........................................................................4

A. The District Court Incorrectly Analyzed Mr. Fried's ADEA Retaliation Claim Under The *Gross* "But For" Causation Standard.............................................................................5

B. Viewing The Record Evidence As A Whole And Applying The Correct Standard To Mr. Fried's Retaliation Claim, Issues Of Fact Exist As To Whether He Was Terminated For Complaining About Discrimination.......................................................................9

III. THE DISTRICT COURT, WHICH FAILED TO VIEW THE RECORD EVIDENCE AS A WHOLE AND IMPROPERLY ENGAGED IN ISSUE-RESOLUTION, ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER MR. FRIED WAS TERMINATED BECAUSE OF HIS AGE ..................................14

A. This Court Should Follow The Ninth Circuit And Not Analyze ADEA Discrimination Claims Under The *Gross* "But For" Standard For The Purposes Of Summary Judgment..........................15

B. Viewing The Record Evidence As A Whole, Issues Of Fact Exist As To Whether Mr. Fried Was Terminated Because Of His Age ......17

IV. THE DISTRICT COURT ERRED IN HOLDING THAT THE NYCHRL WAS INAPPLICABLE TO MR. FRIED'S CLAIMS BECAUSE THE UNLAWFUL DISCRIMINATORY AND RETALIATORY CONDUCT HAD AN IMPACT IN NEW YORK CITY.....22

CONCLUSION.....25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a).....26

# TABLE OF AUTHORITIES

## CASES

*Alam v. HSBC Bank USA, N.A.*,
382 Fed.Appx. 74 (2d Cir. 2010)....................5

*Byrnie v. Town of Cromwell*,
243 F.3d 93 (2d Cir. 2001)....................12

*Casper v. Lew Lieberbaum* & Co., Inc.,
No. 97 Civ. 3016, 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998)....................22

*Clark v. Allen & Overy LLP*,
35 Misc.3d 1229(A) (N.Y. Sup. Ct. 2012)....................23

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000)....................15

*Collins v. Connecticut Job Corps*,
684 F.Supp.2d 232 (D.Conn. 2010)....................12

*Cosgrove v. Sears, Roebuck & Co.*,
9 F.3d 1033 (2d Cir. 1993)....................6, 8

*Cronin v. Aetna Life Ins. Co.*,
46 F.3d 196 (2d Cir. 1995)....................8

*Germano v. Cornell Univ.*,
No. 03 Civ. 9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)....................22

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167, 174 L.Ed.2d 119, 129 S.Ct. 2343 (2009)....................5, 16

*Hoffman v. Parade Publications*,
15 N.Y.3d 285 (2010)....................22

*James v. New York Racing Ass'n*,
233 F.3d 149 (2d Cir. 2000)....................12

*Kessler v. Westchester Cnty. Dept. of Soc. Servs.*,
461 F.3d 199 (2d Cir. 2006) ....................................................................6, 8

*Leibowitz v. Cornell Univ.*,
584 F.3d 487 (2d Cir. 2009) ....................................................................16

*Lightfoot v. Union Carbide Corp.*,
No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994) ...................22

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985) ....................................................................21

*Murphy v. PricewaterhouseCoopers, LLP*,
813 F.Supp.2d 45 (D.D.C. 2011)...............................................................22

*Nieves v. Angelo, Gordon & Co.*,
341 Fed.Appx. 676 (2d Cir. 2009)..........................................................5, 6

*O'Connor v. Consolidated Coin Caterers Corp.*,
517 U.S. 308 (1996)................................................................................19

*O'Reilly v. Marina Dodge, Inc.*,
No. 10-CV-2977, 2011 WL 1897489 (2d Cir. May 19, 2011) .....................21

*Padilla v. Metro-North Commuter R.R.*,
92 F.3d 117 (2d Cir. 1996) ...................................................................8, 12

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989)................................................................................12

*Regan v. Benchmark Co. LLC*,
11 Civ. 4511(CM), 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012)...................23

*Rodriguez v. City of New York*,
644 F.Supp.2d 168 (E.D.N.Y. 2008) .........................................................11

*Salvatore v. KLM Dutch Airlines*,
No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) ..................22

*Shelley v. Geren*,
666 F.3d 599 (9th Cir. 2012) ....................................................15, 16

*Tarshis v. Riese Organization*,
211 F.3d 30 (2d Cir. 2000) ....................................................15, 19

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003) ....................................................6, 8

*White v. Connecticut, Dep't of Corrections*,
3:08 CV 1168 (CFD), 2010 WL 3447505 (D. Conn. Aug. 24, 2010) ..........11

*Witkowich v. U.S. Marshals Service*,
424 Fed.Appx. 20 (2d Cir. 2011)....................................................5

**STATUTES**

29 U.S.C. §623(d) ....................................................6

42 U.S.C. §2000e-(3)(a)....................................................6

## ARGUMENT

### I.

### IN SUPPORT OF THEIR FICTIONALIZED ACCOUNT OF THE FACTS, DEFENDANTS MAKE NUMEROUS ALLEGATIONS THAT ARE NOT SUPPORTED BY THE RECORD

In a contrived effort solely designed to conceal the true reason(s) for Mr. Fried's termination, Defendants make several insincere assertions in their brief that are either not supported by the record or do not contain a citation to the record.[1] For example, in their Preliminary Statement, Defendants falsely state that:

(1) "Less than a month after becoming CEO, State took Fried up on his offer, and asked him to limit his activities on behalf of LVI to those customarily exercised by a Chairman." (Def. Brief p. 2).

- There is nothing in the record to support this false assertion. The record evidence demonstrates that on October 19, 2010, Mr. State decided to strip Mr. Fried of all his duties and reassign them to younger employees. (A-393; A-447; A-476-77; A-515-16). Prior to this discriminatory act, Mr. State never spoke to Mr. Fried about limiting his activities to those customarily exercised by a Chairman.

(2) "Instead, the District Court found that the undisputed evidence showed that Fried had the abilities to perform a valuable role with LVI, as evidenced by the fact that the very same Board that voted to reduce [Mr. Fried's] role within LVI had only months earlier tapped him to fill the interim CEO role while a permanent candidate was sought." (Def. Brief p. 2).

[1] The Brief for Defendants-Appellees is cited to herein as "(Def. Brief p. _)."

- There is nothing in the record to support the false assertion that the Board of LVI Parent Corp. (the "Board") voted to reduce Mr. Fried's role within LVI Services, Inc. ("LVI"). The record evidence demonstrates that Mr. State, not the Board, made the discriminatory decision to strip Mr. Fried of all his job duties. (A-515-16). Moreover, even assuming the Board voted to reduce Mr. Fried's role within LVI, which it did not, there is nothing in the record to support the false assertion that it was the same Board that previously "tapped him to fill the interim CEO role while a permanent candidate was sought." The record evidence demonstrates that Mr. State, Mr. Simmons and Mr. Bagaria were not members of the Board when Mr. Fried was named interim CEO. (A-371; A-410).

(3) "As the extensive record evidence indicates, it was not his age but, his refusal to relinquish control of the reins of management to State that prompted Fried's dismissal." (Def. Brief p. 2-3).

- There is nothing in the record to support this false assertion. As set forth above, the record evidence demonstrates that on October 19, 2010, Mr. State stripped Mr. Fried of all his duties and reassigned them to younger employees. (A-447; A-476-77; A-515-16).

(4) "Fried failed to follow his own advice and posed an ultimatum to the Board and to State that he, not they, would determine his role going forward with LVI, creating the rift that led to his termination." (Def. Brief p. 3).

- There is nothing in the record to support this false assertion. The record evidence demonstrates that Mr. Fried met with Mr. State on October 19, 2010, so Mr. State could determine Mr. Fried's job duties. (A-111-12).

Defendants' campaign of misdirection also seeps into their Statement of Facts. For example, Defendants state that:

(1) "Although LVI's corporate office is in New York City, for the last seven years prior to his departure from LVI, Fried worked out of a satellite office in Westport, Connecticut that LVI leased exclusively for his personal convenience." (Def. Brief p. 4).

- The record evidence, which clarifies this half-truth, demonstrates that from September 2003 through July 2006, Mr. Fried worked almost equally out of LVI's New York City office and its Westport, Connecticut office. (A-389-90; A-497-500; A-532).

(2) "The offer to State was made on September 8, 2010 and negotiations thereafter ensued." (Def. Brief p. 6).

- There is no citation to the record to support this statement.

(3) "As part of these negotiations, and as a condition for accepting the CEO position, State insisted that he be guaranteed the discretion to run the business as he saw fit." (Def. Brief. p. 6-7).

- There is no citation to the record to support this statement.

(4) "During this transition period, State began to notice reluctance on Fried's part to relinquish his interim CEO responsibilities, as he had previously assured State he would do." (Def. Brief p. 8).

- There is no citation to the record to support this statement.

(5) "In addition, State had concerns about Fried's insistence that State confer with him prior to making certain decisions." (Def. Brief. p. 8).

- The record evidence cited by Defendants does not support their statement that Mr. Fried insisted that Mr. State confer with him prior to making a decision. (A-148-49; A-576).

(6) "On October 19, 2010, State met with Fried to discuss, among other transition items, Fried's proposed responsibilities as LVI Chairman." (Def. Brief p. 9).

- The record evidence, which clarifies this half-truth, demonstrates that Mr. Fried did not propose that he continue performing the duties listed in the email he sent to Mr. State. Contrary to Defendants' consistent misrepresentation of the facts, the list of duties Mr. Fried sent to Mr. State was a list of duties he performed when he was Chairman under Mr. McNamara. (A-111-12).

(7) "Despite State's overtures, and despite his own prior assurances, Fried refused to discuss any transition of his role." (Def. Brief. p. 10).

- There is no citation to the record to support this statement.

Defendants' need to resort to trickery in an attempt to win affirmance is telling of the true strength of their arguments. Accordingly, this Court should disregard all of Defendants' unsupported statements, as well as those that do not contain a citation to the record.

## II.

## DESPITE CLEAR EVIDENCE OF RETALIATION, THE DISTRICT COURT, WHICH IMPROPERLY ENGAGED IN ISSUE-RESOLUTION, ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER MR. FRIED WAS TERMINATED BECAUSE HE COMPLAINED OF AGE DISCRIMINATION

Mr. Fried was retaliated against after complaining of age discrimination because, after 24 years of loyal service, he was terminated less than a month after he first complained, and the day after his attorneys sent a letter to Mr. State outlining his allegations of discrimination. Contrary to Defendants' contention, Mr. Fried's retaliation claim is based upon much more than temporal proximity alone. It is also based upon, among other things, the deposition testimony and contemporaneous notes of a Board member, who admitted that in response to Mr. Fried's attorneys' letter, Defendants sent a letter to Mr. Fried terminating his employment.

Although the District Court correctly held that Mr. Fried established a *prima facie* case of retaliation, it erred in granting summary judgment because: (1) it incorrectly analyzed Mr. Fried's ADEA retaliation claim under the Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174 L.Ed.2d 119, 129 S.Ct. 2343 (2009), "but for" causation standard; and (2) regardless of which standard the District Court applied, given the record evidence which demonstrates that in response to Mr. Fried's attorneys' letter, Defendants sent a letter to Mr. Fried terminating his employment, issues of fact exist as to whether Mr. Fried was terminated in retaliation for his complaints of age discrimination.

## A. The District Court Incorrectly Analyzed Mr. Fried's ADEA Retaliation Claim Under The *Gross* "But For" Causation Standard

Although Defendants contend that the District Court did not analyze Mr. Fried's ADEA retaliation claim under the Gross "but for" causation standard, they go on to claim that even if the District Court did, it would have been proper to do so. Defendants could not be more wrong since, post-Gross, this Circuit has correctly not applied the heightened standard to ADEA retaliation claims. See, e.g., Witkowich v. U.S. Marshals Service, 424 Fed.Appx. 20 (2d Cir. 2011); Alam v. HSBC Bank USA, N.A., 382 Fed.Appx. 74 (2d Cir. 2010); Nieves v. Angelo, Gordon & Co., 341 Fed.Appx. 676 (2d Cir. 2009).

In support of their unconvincing position, Defendants argue that since the ADEA's discrimination and retaliation provisions contain similar "because of"

language, the "because of" language in the later provision should be interpreted the same way as the Gross Court interpreted the "because of" language in the former provision; thus, requiring "but for" causation. However, as set forth on pages 20-22 in Mr. Fried's brief, the retaliation provisions of Title VII and the ADEA are nearly identical. Compare 42 U.S.C. §2000e-(3)(a) with 29 U.S.C. §623(d). As a result, this Circuit has held both before and after Gross, that the same standards and burdens apply to retaliation claims under the ADEA and Title VII. See Nieves, 341 Fed.Appx. at 679; Kessler v. Westchester Cnty. Dept. of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006). A violation of Title VII's retaliation provision occurs when "a retaliatory motive plays a part in adverse employment actions towards an employee, whether or not it was the sole cause." Terry v. Ashcroft, 336 F.3d 128, 141-42 (2d Cir. 2003) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993). Thus, because this Court does not interpret Title VII's retaliation provision to require a showing of "but for" causation, the Gross interpretation of the "because of" language to the ADEA's retaliation provision is inapplicable. Accordingly, since neither the Supreme Court nor the Second Circuit has squarely addressed this issue post-Gross, the pre-Gross interpretation of the ADEA's retaliation provision, which does not require a showing of "but for" causation, is the appropriate standard.

Despite the fact that the Gross "but for" causation standard is not applicable to ADEA retaliation claims, the District Court's Opinion and Order indicates that the District Court did indeed apply this incorrect standard to Mr. Fried's retaliation claim. In analyzing Mr. Fried's retaliation claim under the third-part of the McDonnell Douglas burden-shifting framework, the District Court specifically held that "[f]or the reasons already limned above, plaintiff's claim of retaliation fails with respect to the . . . decision to fire Fried." (Emphasis added). (SPA-31). The only reasons "limned above" in the Opinion and Order concerned Mr. Fried's purported inability to demonstrate that "but-for" his age, Defendants would not have terminated him. (SPA-20-29).

Furthermore, when analyzing Mr. Fried's ADEA discrimination claim under the third-part of the McDonnell Douglas burden-shifting framework, the District Court used the words "pretext" or "pretextual" in reference to Mr. Fried's ultimate burden of demonstrating "but for" causation. (SPA-23-28). Similarly, when analyzing Mr. Fried's ADEA retaliation claim under the third-part of the McDonnell Douglas burden-shifting framework, the District Court used the same words to describe Mr. Fried's ultimate burden. (SPA-29-31). This, too, indicates that the District Court applied the "but for" standard to Mr. Fried's retaliation claim. Finally, the fact that the District Court did not evaluate Mr. Fried's retaliation claim under the applicable "motivating factor" standard (or even

acknowledge its existence) is further evidence that the District Court applied the "but for" standard.

It is clear that the District Court mistakenly analyzed Mr. Fried's ADEA retaliation claim under the wrong standard and not under the applicable "motivating factor" standard. See Terry, 336 F.3d at 140-41 (noting that the ADEA is "violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'") (quoting Cosgrove, 9 F.3d at 1039)); Kessler, 308 Fed.Appx. at 530 ("it is well established that a plaintiff in a retaliation case does not bear the burden of proving that the defendant's explanation for the challenged employment decision is pretext . . . .") (internal citations omitted)); Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 122-23 (2d Cir. 1996) (with respect to an ADEA retaliation claim, this Court noted that "'[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.") (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)).

### B. Viewing The Record Evidence As A Whole And Applying The Correct Standard To Mr. Fried's Retaliation Claim, Issues Of Fact Exist As To Whether He Was Terminated For Complaining About Discrimination

The District Court correctly held that Mr. Fried established a *prima facie* case of retaliation because he: (1) complained of age discrimination as early as October 19, 2010 to several members of the Board; (2) complained of age discrimination again on November 4, 2010 during a Board meeting; (3) complained of age discrimination one final time on November 15, 2010 through his attorneys who wrote a letter, which was addressed to State and discussed by certain members of the Board, outlining his allegations of discrimination; and (4) was terminated less than a month after he first complained of age discrimination, and the day after he last complained. (SPA-29-31). Despite the District Court's holding on this point, Defendants attempt to re-litigate the issue of causation even though the District Court held that "because Fried has produced evidence suggesting that he engaged in protected activity before defendants contemplated . . . offering Fried the consulting agreement, defendants' argument in this regard is unpersuasive." (SPA-31).

First, Defendants contend that no causal connection existed between Mr. Fried's complaints of discrimination and the decision to terminate his employment because they contemplated offering him a consulting agreement on September 19, 2010. Defendants premise their groundless contention on a September 19, 2010

email from Mr. State, who had not yet accepted LVI's offer of employment, to Mr. Hogan, a member of the Board. This email, however, does not support Defendants' contention, as it merely states Mr. State's hope that Mr. Fried would continue to support LVI under a consulting agreement after he retired. (A-568-69). Contrary to Defendants' contention, nothing in this email could remotely be construed as LVI contemplating offering Mr. Fried a consulting agreement and terminating his employment prior to his complaints of discrimination. In fact, it is undisputed that prior to September 23, 2010 (the date Mr. State allegedly accepted LVI's offer), the Board never contemplated terminating Mr. Fried's employment. (A-372-73; A-416).

Second, Defendants contend that no causal connection existed between Mr. Fried's November 4, 2010 and November 15, 2010 complaints of discrimination and the decision to terminate his employment because they contemplated offering him a consulting agreement on November 2, 2010. Defendants premise their baseless argument on a November 2, 2010 email from Mr. Simmons, a member of the Board, to Mr. Fried. Likewise, this email does not support Defendants' contention because the email is based on Mr. Simmons' "opinion" and "thoughts" about Mr. Fried's continued role at LVI. (A-204-05). Given that Mr. Simmons also wrote that this issue could be discussed during the November 4, 2010 Board meeting, nothing in this email could reasonably be construed as LVI contemplating

offering Mr. Fried a consulting agreement and terminating his employment. (A-204-05). In fact, it is undisputed that prior to November 4, 2010, the Board never contemplated terminating Mr. Fried's employment. (A-374-75; A-415-16).

Finally, Defendants maintain that no causal connection exists between Mr. Fried's November 15, 2010 complaint of discrimination and the decision to terminate his employment because they contemplated offering him a consulting agreement on November 11, 2010. Defendants again premise their untenable argument on a November 11, 2010 email that contained an unsigned draft letter offering Mr. Fried a consulting agreement and terminating his employment. (A-705). However, neither the letter nor its contents were disclosed to Mr. Fried prior to November 16, 2010, when a final version of the letter was sent to Mr. Fried the day after he complained about discrimination. (A-603-04). To the extent Defendants considered terminating Mr. Fried's employment prior to his November 15, 2010 complaint of discrimination, but did not do so until thereafter, a causal connection still exists. See, e.g., Rodriguez v. City of New York, 644 F.Supp.2d 168, 193 (E.D.N.Y. 2008) (causal connection established where recommendation to terminate was made three weeks before the protected activity because final decision was not made until after the protected activity); White v. Connecticut, Dep't of Corrections, 3:08 CV 1168 (CFD), 2010 WL 3447505, *10 (D. Conn.

Aug. 24, 2010) (causal connection established where final decision to terminate was made after protected activity).

Despite Mr. Fried's substantial evidence of retaliation, Defendants also contend that the District Court correctly found that Mr. Fried failed to establish that their reason for terminating him was a "pretext" for retaliation. Mr. Fried need not prove that Defendants' "proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." Padilla, 92 F.3d at 122 (quoting Cronin, 46 F.3d at 203) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 247, 249 (1989))); see Collins v. Connecticut Job Corps, 684 F.Supp.2d 232, 256 (D.Conn. 2010) ("At the third stage of the *McDonnell Douglas* test, 'the governing standards is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited [retaliation] occurred.'") (quoting James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000)). When reviewing the totality of the circumstances, issues of fact exist as to whether Mr. Fried's age was a motivating factor in the decision to terminate and/or whether Defendants' articulated reason for terminating Mr. Fried was false.

A fair conclusion can be drawn "from the perspective of the entire record" that Defendants terminated Mr. Fried in retaliation for his complaints. Id. (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 105 (2d Cir. 2001)). In this case, in

addition to the fact that Mr. Fried, after 24 years of loyal service, was terminated less than one month after he first complained of age discrimination, Girardi testified at deposition that in response to Mr. Fried's November 15 written complaint of age discrimination, the Board sent him a letter the next day terminating his employment. (A-418-19; A-604).

This retaliatory act was documented by Girardi who wrote, in his contemporaneous notes, the following: "Burt – sent pre-emptive letter; ignore and send good faith letter offer to Burt Fried." (A-601). The "good faith letter offer" referenced by Girardi was the letter that terminated Mr. Fried's employment. (A-604). A reasonable jury relying on Girardi's notes alone could easily infer that Mr. Fried's complaint was a motivating factor in the decision to terminate.

Accordingly, viewing the facts in a light most favorable to Mr. Fried, material issues of fact exist as to the veracity of Defendants' reason for terminating Mr. Fried, and whether Mr. Fried's complaints of discrimination, including the November 15 letter complaining of age discrimination, were a motivating factor in the decision to terminate.

## III.

## <u>THE DISTRICT COURT, WHICH FAILED TO VIEW THE RECORD EVIDENCE AS A WHOLE AND IMPROPERLY ENGAGED IN ISSUE-RESOLUTION, ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER MR. FRIED WAS TERMINATED BECAUSE OF HIS AGE</u>

Defendants discriminated against Mr. Fried by terminating his employment because of his age less than one month after Mr. Fried made it crystal clear to Mr. State that he had no intention of retiring from the company he founded and spent 24 years building. Thereafter, Mr. State made it his goal to put Mr. Fried out to pasture as evidenced by his emails which state "I was clear with [Mr. Fried] that it was my objective to have him truly retire and be just an on call resource" and that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (A-473; A-487; A-575). Mr. State, who is 23 years younger than Mr. Fried, decided to terminate Mr. Fried under the guise of needing to be able to manage LVI without interference from Mr. Fried. This reason, however, is clearly false as there is no record evidence that Mr. Fried interfered with Mr. State's management of LVI. In fact, after October 19, 2010, Mr. Fried could not have interfered because Mr. State stripped him of his job duties. Although the record is clear that Mr. Fried was terminated because of his age, at the very least, issues of fact exist as to whether Mr. Fried would not have been terminated "but for" his age.

**A. This Court Should Follow The Ninth Circuit And Not Analyze ADEA Discrimination Claims Under The *Gross* "But For" Standard For The Purposes Of Summary Judgment**

In Shelley v. Geren, 666 F.3d 599 (9th Cir. 2012), which, as Defendants know, was decided after Mr. Fried submitted his opposition to their summary judgment motion, the Ninth Circuit held that in the context of a motion for summary judgment, the Gross "but for" standard does not apply when analyzing ADEA disparate treatment claims. Mr. Fried contends that the rationale of this well-thought and well-reasoned opinion should be followed by this Circuit. Unsurprisingly, Defendants contend the opposite.

Prior to Gross, both the Second Circuit and the Ninth Circuit applied the McDonnell Douglas burden-shifting framework when analyzing motions for summary judgment on ADEA claims, and required a plaintiff to show that discrimination was the real reason for the employment action by, among other things, showing that discrimination was a motivating factor in the employment decision. See, e.g., Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000); Tarshis v. Riese Organization, 211 F.3d 30, 36 (2d Cir. 2000). Because Gross involved a case that had already progressed to trial, the Supreme Court did not address the evidentiary framework applicable to a motion for summary judgment. In fact, the Supreme Court specifically noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas*

utilized in Title VII cases is appropriate in the ADEA context." Gross, 129 S.Ct. at 2349, n.2. Since Gross, the Second Circuit has continued to utilize the McDonnell Douglas framework to decide motions for summary judgment in ADEA cases. See, e.g., Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009).[2] The Shelley Court joined the Second Circuit in this practice but held "that nothing in *Gross* overruled our cases utilizing this framework to decide summary judgment motions in ADEA cases. The *McDonnell Douglas* test is used on summary judgment, not at trial." Shelley, 666 F.3d at 607. Thus, the Ninth Circuit stated that:

> to survive summary judgment on his claim for a violation of the ADEA under the disparate treatment theory of liability, Shelley must first establish a prima facie case of age discrimination. If he is successful, the burden of production shifts to the [defendant] to articulate a legitimate non-discriminatory reason for its adverse employment action. It is then Shelley's task to demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination. At trial, he must carry the burden to prove that age was the "but for" cause of his non-selection.

(Internal citations omitted). Id. at 608.

Accordingly, this Court should follow the Ninth Circuit's rationale in Shelley, and decline to apply the Gross "but for" standard in connection with resolving summary judgment motions involving ADEA discrimination claims.

---

[2] In their brief, Defendants mistakenly claim that Leibowitz v. Cornell Univ., is a pre-Gross decision. Gross was decided on June 18, 2009, and Leibowitz was decided on October 23, 2009. In fact, Leibowitz even cites to Gross. See Leibowitz, 584 F.3d at 504. Instead of accusing Defendants of trying to mislead this Court, Mr. Fried, unlike Defendants, will take the high road and assume that Defendants did not look before leaping.

### B. Viewing The Record Evidence As A Whole, Issues Of Fact Exist As To Whether Mr. Fried Was Terminated Because Of His Age

Despite Mr. Fried's substantial evidence of retaliation, Defendants contend that the District Court correctly found that Mr. Fried failed to establish that "but for" his age, he would not have been terminated. However, when reviewing the totality of the circumstances, which the District Court failed to do, issues of fact exist as to whether Mr. Fried would have been terminated "but for" his age.

Defendants contend that because the Board viewed Mr. Fried as a good performer, and because he was asked to serve as interim President and CEO at the age of 70, this evidence cuts against a finding of age discrimination because the Board did not view Mr. Fried as "incapacitated because of his age." This contention is wholly without merit. First, Mr. State did not view Mr. Fried as a good performer. (A-482). Second, Mr. State was not part of the Board when Mr. Fried was asked to serve as interim President and CEO. (A-371). Since Mr. State, not the Board, made the decision to terminate Mr. Fried, the Board's view of Mr. Fried is not relevant. (A-614; A-633; A-647; A-662). It is Mr. State's view of Mr. Fried that matters, and he viewed Mr. Fried as a 71 year old "senior [person]" who needed to retire, despite not wanting to do so. (A-516; A-576).

Defendants also contend that Mr. Fried was terminated because he refused "to relinquish control of the reins of management to State." There is absolutely no record evidence to support this bald assertion, especially since Mr. State stripped

Mr. Fried of all his job duties. (A-516-18). And, prior to that date, the record evidence demonstrates that after Mr. State was hired by LVI, Mr. Fried relinquished the President and CEO title to him and returned to perform his Chairman duties -- the same Chairman duties he performed while Chairman under Mr. McNamara. (A-371; A-572).

Defendants also contend that "the record is replete with undisputed evidence that Fried began a campaign of interference from State's earliest days at LVI." Mr. Fried disputes this alleged "undisputed evidence." For example, Defendants argue that Mr. Fried interfered with Mr. State's ability to manage LVI because he "repeatedly demanded that State confer with him prior to making a decision." This is a gross mischaracterization of the record. Mr. Fried did not "demand" that Mr. State confer with him about anything, as evidenced by the emails Defendants cite. (A-173-74; A-176-82; A-576). Defendants also argue that Mr. Fried interfered with Mr. State's ability to manage LVI because he "communicated his intent to continue to involve himself with LVI's management by presenting State with a list of responsibilities he proposed to perform . . . ." This is another mischaracterization of the record. The list of responsibilities Mr. Fried emailed to Mr. State was a list of job duties he performed as Chairman under Mr. McNamara, and he sent it to Mr. State in preparation for the October 19, 2010 meeting which was to discuss Mr. Fried's job duties going forward. (A-111-12).

Defendants also contend that because Mr. Fried's job duties were reassigned to employees over the age of 40, with the exception of one manager, this evidence cuts against a finding of age discrimination even though these employees were 13 to 26 years younger. The fact that Mr. Fried's job duties were reassigned to employees within his protected class is not a relevant consideration. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (reversing summary judgment for a defendant which had successfully argued below that the plaintiff, a member of the protected age class, could not state an ADEA claim because his successor was a member of the protected age class). The relevant consideration is the difference in age. See Tarshis, 211 F.3d at 39 (stating that an inference of discrimination may be based upon an age difference of as little as eight years).

Defendants mistakenly contend that the District Court correctly concluded that Mr. State's numerous email communications regarding his desire that Mr. Fried retire constituted "stray comments." Contrary to Defendants' contention, the District Court did not classify the contents of these emails as "stray comments." (SPA-24-25). The District Court did, however, incorrectly find that these communications were legitimate inquiries concerning retirement or transition planning. (SPA-25-26). The District Court completely missed the mark because it is undisputed that Mr. State was fully aware at the time he sent these emails that

Mr. Fried had no intention of retiring. (A-444; A-485; A-569). Furthermore, the content of these emails certainly do not indicate that Mr. State was inquiring into Mr. Fried's retirement plans. For example:

- On September 19, 2010, before Mr. State was hired, Mr. State emailed Mr. Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI." (A-485; A-569).

- After meeting with Mr. Fried on October 19, 2010, Mr. State wrote to Mr. Simmons, "I was clear with [Mr. Fried] that it was my objective to have him truly retire and be just an on call resource." (A-575).

- On November 5, 2010, Mr. State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (A-473; A-487).

These emails cannot reasonably be interpreted as legitimate inquiries by Mr. State into Mr. Fried's retirement plans, especially since Mr. State knew that Mr. Fried had no intention of retiring. When combined with his October 19, 2010 ageist remark ("Burt, you're 71 years of age, how much longer do you expect to work?"), these emails can only be viewed as evidence of Mr. State's discriminatory animus toward Mr. Fried because of his desire to force him to retire because of his age.

By creating an elaborate fiction, Defendants attempt to place these emails in context by essentially claiming that Mr. State used the word "retire" in reference to

when Mr. Fried would step down from his leadership role and/or his day-to-day activities. Defendants are trying to fit a square peg into a round hole. Their disingenuous attempt to contextualize Mr. State's ageist comments in his emails is belied by Mr. State's own deposition testimony in which he testified that he used the word "retirement" in reference to when Mr. Fried would step away from the company. (A-484). By improperly resolving this factual issue of Mr. State's intent, the District Court erred by making a credibility determination regarding Mr. State's state of mind. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) (summary judgment is "inappropriate where an individual's intent and state of mind are implicated."); O'Reilly v. Marina Dodge, Inc., No. 10-CV-2977, 2011 WL 1897489, at *2 (2d Cir. May 19, 2011) ("Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.").

Accordingly, viewing the facts in a light most favorable to Mr. Fried, material issues of fact exist as to the veracity of Defendants' reason for terminating Mr. Fried, and whether "but for" his age, Mr. Fried would not have been terminated.

## IV.

## THE DISTRICT COURT ERRED IN HOLDING THAT THE NYCHRL WAS INAPPLICABLE TO MR. FRIED'S CLAIMS BECAUSE THE UNLAWFUL DISCRIMINATORY AND RETALIATORY CONDUCT HAD AN IMPACT IN NEW YORK CITY

Following the incorrect lead of the District Court, Defendants contend that the NYCHRL is not applicable to Mr. Fried's claims because the decision to terminate did not impact him in New York City. Defendants' contention is a blatant misstatement of the applicable law because Mr. Fried is only required to demonstrate that the unlawful conduct had an impact in New York City.

Hoffman v. Parade Publications, 15 N.Y.3d 285 (2010), governs because Mr. Fried is a nonresident of New York City. Thus, all of the unreported cases cited by Defendants (Lightfoot v. Union Carbide Corp., No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994), Casper v. Lew Lieberbaum & Co., Inc., No. 97 Civ. 3016, 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998), Salvatore v. KLM Dutch Airlines, No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) and Germano v. Cornell Univ., No. 03 Civ. 9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)) are inapposite because they pre-date Hoffman. Hoffman clearly holds that nonresidents who suffer discrimination outside of New York City must plead and prove that the discriminatory conduct had an impact in New York City. 15 N.Y.3d at 289; see Murphy v. PricewaterhouseCoopers, LLP, 813 F.Supp.2d 45,

52 (D.D.C. 2011); Clark v. Allen & Overy LLP, 35 Misc.3d 1229(A), at *4 (N.Y. Sup. Ct. 2012).

The application of Hoffman to a strikingly similar case is best illustrated in Regan v. Benchmark Co. LLC, 11 Civ. 4511(CM), 2012 WL 692056, at *13-14 (S.D.N.Y. Mar. 1, 2012).[3] In Regan, the plaintiff asserted claims for gender discrimination and retaliation under the NYCHRL while she lived and worked for the corporate defendant in New Jersey. Id. at *13. The defendants argued that the plaintiff's NYCHRL claims did not allege discriminatory conduct with an impact in New York City because the plaintiff both lived and worked in New Jersey. Id. Correctly categorizing the defendants' argument that the unlawful conduct had no impact in New York City as meritless and disingenuous, Judge McMahon noted that after the plaintiff was transferred to the corporate defendant's New Jersey office, she remained affiliated with the corporate defendant's New York City office by continuing to service New York City-based clientele and remained under the management and supervision of the New York City office. Id. at *13-14. Taking all of this into account, the court properly held that:

> although Regan was physically working out of Jersey City, all other aspects of her employment connected her to [the corporate defendant's] New York City office. As a result, the alleged discriminatory conduct . . . had an impact in New York City.

---

3 Regan was decided on March 1, 2012, three days after Mr. Fried filed his brief with this Court.

Id.

Similarly, Defendants' argument in this case should likewise be rejected as meritless and disingenuous. As set forth in detail on pages 44-46 in Mr. Fried's brief, despite physically working in LVI's Connecticut office, all other aspects of his employment connected him to LVI's New York City office, which was the company's headquarters. For example, in the six months prior to his unlawful termination, Mr. Fried: (1) worked in New York City by physically attending at least seventeen business meetings there -- some of which resulted in projects that employed hundreds of individuals in New York City (A-540-42); and (2) called and/or emailed personnel in the New York City office almost daily about LVI-related projects in New York City and/or about issues involving the operations of LVI at its New York City office (A-542). Moreover, Mr. State discriminatorily stripped Mr. Fried of his job duties during a meeting between them in New York City, and Mr. Fried opposed this action at a Board meeting which was held in New York City. (A-374; A-515; A-578; A-589-90). Accordingly, the discriminatory and retaliatory conduct had an impact in New York City.

## CONCLUSION

For the reasons set forth herein and in the Brief for Plaintiff-Appellant, Mr. Burton T. Fried respectfully requests that this Court reverse the District Court's grant of summary judgment and remand this case to the District Court for further proceedings, and grant such other and further relief that this Court deems just and proper.

Dated: June 12, 2012
New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

By: /s/

Douglas H. Wigdor
Shaffin A. Datoo

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@thompsonwigdor.com
sdatoo@thompsonwigdor.com

Attorneys for Plaintiff-Appellant

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,201 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2003 in Times New Roman font using a 14-point font size.

Dated: June 12, 2012
New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

By: /s/
Douglas H. Wigdor
Shaffin A. Datoo

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@thompsonwigdor.com
sdatoo@thompsonwigdor.com

Attorneys for Plaintiff-Appellant